# Berninger, Appellant, *v.* Sunbury, Hazleton & Wilkes-Barre Railway Company.

*Railroads—Bridges—Ice gorge—Injury to land—Negligence.*

In an action against a railroad company to recover damages for injuries to land caused by an ice gorge at one of the railroad company's bridges, the mere fact that the ice gorged at the bridge and backed the water on plaintiff's property does not of itself fix upon the defendant the charge of negligence. Plaintiff must go further, and show that defendant did not construct the bridge with proper care and skill, having regard to the landowners above and below. In such a case the plaintiff is met at the start with the presumption that there was no negligence in the design or construction of the bridge, and this presumption he must overcome in order to recover.

In an action against a railroad company to recover damages for injuries to land resulting from an ice gorge at a railroad bridge, a nonsuit is properly entered where the evidence offered for the plaintiff showed that the width of the waterway under the bridge was more than double the width of the stream; that this width was ample for all ordinary freshets and floods; that at the time of the accident the ice was from fifteen inches to two feet thick; that it began piling up a considerable distance above the bridge; that the gorge reached a height of fifteen feet; that in its movement down the stream it gathered bulk, and that when it reached the bridge its mass was so huge that it rested against the bridge for three hours; and that in this time the water of the stream was backed and injured plaintiff's property.

Argued April 15, 1902. Appeal, No. 33, Jan. T., 1902, by plaintiff, from order of C. P. Columbia Co., Sept. T. 1898, No. 109, refusing to take off nonsuit in case of William Berninger v. Sunbury, Hazleton & Wilkes-Barre Railway Company and its lessee, The Pennsylvania Railroad Company. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before Little, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order refusing to take off nonsuit.

*W. H. Rhawn*, with him *Grant Herring* and *C. A. Small*,

for appellant, cited: Brown v. Pine Creek Ry. Co., 183 Pa. 38; Pittsburg, etc., Ry. Co. v. Gilleland, 56 Pa. 445.

*James Scarlet,* with him *L. E. Waller,* for appellee.

OPINION BY MR. JUSTICE DEAN, October 13, 1902:

This is an action of trespass brought by the plaintiff against defendant to recover damages occasioned by backwater on his mill property situate on Catawissa creek in Columbia county. Plaintiff's property was 2,000 feet up stream from where defendant's railway bridge crossed the same stream. In March, 1893, an ice gorge lodged against the piers of the bridge, which had the effect of damming back the water to plaintiff's mill dam and partially destroying it; he alleged the bridge was unskillfully and negligently constructed, in that the piers were not properly set to meet the current of the stream in time of spring floods, and further, that they were not far enough apart to afford passage to floating ice at break-ups in spring freshets. The defendant alleged that the bridge was constructed according to the best engineering skill, to meet any ordinary or probable demand upon it, in view of the size of the stream and the watershed contributory to it. That this was the whole duty demanded of it, and having performed this, it was guilty of no negligence which would support plaintiff's action.

At the close of plaintiff's evidence, the learned judge of the court below, being of opinion, that plaintiff had failed to make out a case warranting a verdict, directed a nonsuit. This he afterwards, on motion, refused to take off, and we have this appeal by plaintiff. The reason given by the court for directing a nonsuit is that the bridge, whether negligently or skillfully constructed, was the act of an independent contractor, and that for his act under the authority of Painter v. Pittsburg, 46 Pa. 221, he alone was answerable to third parties. This ruling may have been correct; in our examination of the evidence it does not appear clearly to be so. But however this may be, if for any other reason the evidence failed to show negligence on the part of defendant, plaintiff's case must fail, and the decree should be affirmed. The bridge is 182 feet between the abutments; it has three piers with cutwater points; the stream at the bridge and for some distance above it is about fifty feet wide; deduct-

ing the area covered by the foundations of the piers, there is over 100 feet of waterway between the abutments; the usual depth of the water is two to three feet; the fall from plaintiff's property to the bridge is about fifteen feet; between the bridge and plaintiff's mill are a country bridge and pipe-line, both crossing the stream; there is also a paper-mill dam between.

What was the defendant's duty in the design and construction of this bridge? The fact that the ice gorged at the bridge and backed the water on plaintiff's property, does not of itself fix upon defendant the charge of negligence; plaintiff must go further, and show, that defendant did not construct the bridge with proper care and skill, having regard to the landowners above and below. The case of Pittsburg, etc., Railway Co. v. Gilleland, 56 Pa. 445, a case of alleged negligence in the construction of a culvert, lays down a rule which satisfies both law and reason; we said in that case:

"If the culvert was so unskillfully and negligently constructed as to be insufficient to vent the ordinary high water of the stream, the railroad company building it would have been liable for the injury thereby caused. The apparent facts indicated the duty. The stream, though small, must find a vent or overflow the adjacent land and undermine the railroad. The size, the character of its channel, and the declivity of the circumadjacent territory which forms the watershed, indicated the probable quantity of water to pass through. Proper engineering skill should observe these circumstances and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage so as to cause a reflux in times of ordinary high water. Beyond this, prudent circumspection cannot be expected to look, and there is, therefore, no liability for extraordinary floods." This rule was followed in Baltimore & Ohio Railroad Co. v. Sulphur Spring Independent School District, 96 Pa. 65, and Brown v. Pine Creek Railway Co., 183 Pa. 38.

As a nonsuit was directed on plaintiff's evidence, no witnesses were called by defendant to prove the character of or adaptability of the bridge to the purpose of its construction; the presumption is, that it was skillfully and carefully constructed; the burden was on the plaintiff to rebut the presumption. We said in Pittsburg, etc., Railroad Co. v. Gazzam, 32

Pa. 340: "If on the whole of the plaintiff's evidence being submitted to the jury, they would not be justified in finding a verdict against defendant, it is the duty of the court, under the provisions of the 7th section of the act of March 11, 1836, to order a nonsuit to be entered. Was the evidence in this case then sufficient to justify the jury, if submitted to them, in finding for the plaintiff, or would the court have set aside their verdict? This in our opinion is the true test." And then again, in Phila. & Reading Railroad Co. v. Hummell, 44 Pa. 375, we said, "What is ordinary care and what is negligence are inquiries in most cases to be answered by a jury, but negligence is not to be found without evidence. There is always a presumption against it." We then start with the presumption, that there was no negligence in the design or construction of the bridge, and this not without reason. The safety of defendant's railway was an impelling motive to skillful and durable construction; the sweeping away of a costly bridge, would, in a pecuniary sense, be far more damaging to it than to the landowner above; we then have the width of the waterway provided under the bridge more than double the width of the stream; also the photographs of the creek and the structure over it, showing apparently, ample provision for all ordinary freshets and floods. One witness, Hamlin, testified that in his opinion, the piers might have been constructed differently so as to better meet the flow of the creek; he said, "The water does not strike them on the point exactly, it strikes them kind of sidewise," and that obstructs the natural flow of the water. The witness was not an engineer; his opinion was not that of an expert, and was not sufficient to determine that the design of trained engineers was a negligent one. Plaintiff did not call a single engineer or bridge builder to testify to negligence in design or construction; the fact that the gorge of ice in the creek lodged at the bridge was the main fact from which negligence is inferred; in other words, that the accident shows negligence. This we have held, over and over, is not sufficient to warrant an inference of negligence. But the plaintiff's own testimony, which is clear and connected, shows that the ice gorge to some extent formed above his property, and gathered bulk from there to the bridge, where it stopped for about three hours, then broke and passed on to the river; it was at least

fifteen feet high and extended from the bridge to his dam; the ice was fifteen inches to two feet thick; it commenced piling up above his dam, accumulating until the bridge was reached, where it stopped. The plaintiff further said, that while there had been floods in the creek, there had been none since the bridge was built so bad as this one. It is clear and indisputable from all plaintiff's testimony, that the vents in the bridge were of ample capacity to pass any ordinary spring freshet, and the ordinary ice formation upon the water; that this was an ordinary freshet but the ice was of more than ordinary thickness; that it commenced piling above plaintiff's property, so that when it reached the bridge the mass was so huge, that it did not immediately pass under; that it rested there for a few hours; the effect was to dam the water back and injure plaintiff's property. From these facts no inference of negligence on part of defendant is warranted; it had provided for every ordinary contingency of flood and ice; it had not provided for this extraordinary one, the accumulation of a large body of ice, thousands of feet above and floating down in one great mass upon the bridge; nor did ordinary care require it to provide for such a contingency. While it was required to provide for ordinary freshets, and the ordinary floating ice, it could not, in the exercise of ordinary foresight, have provided for this. If an ordinary flood had detached and floated down a house or other building, it would not have been negligence not to provide a span high enough and wide enough for a house to pass through; nor if, as sometimes occurs, a large mass of drift, consisting of trees and stumps, should have floated down and choked the flow of the stream at the spans, could they have been expected in the exercise of ordinary care to provide for such a circumstance.

They were not bound to extraordinary prevision; the most competent engineer was not bound to see what was unseeable; he was only bound to foresee and provide for the volume and destructiveness of the ordinary flood and the ordinary force and bulk of floating ice. On plaintiff's own evidence, this duty defendant performed. While we do not concur in the reason for the nonsuit given by the learned judge of the court below, we do concur in this decree for the reason given by us. Therefore the judgment is affirmed.