# Dutton *v.* Philadelphia, Baltimore & Washington Railroad Company, Appellant.

*Railroads—Construction of bridge—Injury to dam—Negligence.*

Where a railroad company for the purpose of strengthening or supporting a previously constructed bridge, erected trestles under the bridge in the bed of the stream in such a way as to pack the ice in large masses, which on breaking away destroyed a dam breast, the owner of the dam is entitled to recover damages from the railroad company for the injuries sustained.

*Evidence—Expert witness—Negligence—Construction of bridge—Railroad.*

A witness called to testify as to the negligent construction of a sup-

port for a bridge by a railroad company, is qualified as an expert where it appears that he had had a course of technical education in engineering, had followed railroad engineering as a profession, had experience in the bridging of streams, and had examined the construction in question, had made measurements of it, and was familiar with the topography of the surrounding country and the general force and size of the stream.

Where an expert witness called to establish negligence has been improperly rejected, and the defendant has introduced testimony to negative the contention of the plaintiff, the court may permit the plaintiff to call the expert in rebuttal.

Argued Nov. 19, 1906. Appeal, No. 69, Oct. T., 1905, by defendant, from judgment of C. P. Del. Co., Sept. T., 1903, No. 114, on verdict for plaintiff in case of George G. Dutton v. Philadelphia, Baltimore & Washington Railroad Company and the Chester Creek Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for injuries to a milldam.

The facts are stated in the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $1,360.74. Defendant appealed.

*Errors assigned* were (1, 2) in permitting E. A. Howell to testify; (3, 4) in refusing binding instructions for defendant.

*John J. Pinkerton*, for appellants.—There was no evidence in this case that the defendant did not construct the bridge with proper care and skill, having regard to the landowners below, and the third point submitted by the defendant should have been affirmed: Berninger v. Sunbury, etc., R. R. Co., 203 Pa. 516.

*O. B. Dickinson*, with him *D. F. Rose*, for appellee.—Where there is evidence of insufficient vent given in bridge construction this is sufficient to constitute negligence for which the defendant is liable: Smith v. Shields, 194 Pa. 635; Berninger v. R. R. Co., 203 Pa. 516; Fick v. R. R. Co., 157 Pa. 622; Bell

v. McClintock, 9 Watts, 119 ; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 Rawle, 9 ; McCoy v. Danley, 20 Pa. 85.

OPINION BY BEAVER, J., February 25, 1907 :

A clear understanding of the plaintiff's cause of action, as set forth in his statement, will greatly simplify the disposition of this case.

The claim is that the breast of the dam of the plaintiff was torn out by reason of the restriction of the flow of the ice, in and from a stream over which the defendant had erected a bridge, upon and over which its railroad was constructed.

The plaintiff's statement sets forth, that " Said bridge, as it was originally constructed and as it remained for many years, rested on two abutments, one on each side of said creek, clear of the stream itself, and leaving the whole of said creek open for the free passage of water, ice and such matter as usually passes along said creek." After reciting the duty of the defendant to maintain the bridge in such a way " as to leave said creek clear and open for the free passage of water," etc., the statement goes on to say : " yet the defendants, not regarding their said duty, afterward for the purpose of strengthening or supporting said bridge or repairing or altering the same, or for some other reason or reasons unknown to said plaintiff, their duty in this behalf not regarding, negligently, wrongfully and carelessly, and in total disregard of plaintiff's rights, placed and erected five heavy trestles under said bridge in the bed or stream of said creek, which said trestles being so placed and erected, being actually in the dam of said plaintiff, that the free passage of water, ice and such other matter as aforesaid was greatly interfered with, so that afterward, to wit, on or about the 26th of February, A. D. 1902, on the breaking up of the ice that had formed in said creek above said bridge, the ice, water and matter usually passing along said creek on the breaking up of the ice was unable to pass freely along said creek under said bridge, by reason of said trestles, but were caught in and against the same and became packed and jammed and piled up there to a great height, and formed a dam of large dimensions, and said ice, instead of passing freely along said creek, because of said trestles, became packed in large masses, which, on breaking away from the pack or dam at said bridge,

passed down said creek and broke through, tore out, demolished and destroyed said dam-breast of said plaintiff, whereby the water escaped from the dam maintained by his said dam-breast, so that said plaintiff was compelled to build and maintain a temporary dam-breast at once and afterward a permanent one, at a cost," etc.

The complaint, therefore, was not of the original construction but of a subsequent construction, negligently made, within the limits of the stream across which the defendant's dam was erected. The very essence of the complaint and the trend of the testimony was to show such negligence. The case does not, therefore, come within the lines of Berninger v. Sunbury, Hazleton & Wilkes-Barre Railway Co., 203 Pa. 516, upon which the appellant seems to rely. It is rather similar to and governed by Miller v. Buffalo & Susquehanna Railroad Co., 29 Pa. Superior Ct. 515, the facts in which were almost identical. The case was, therefore, for the jury, if there was competent testimony as to negligence, or lack of care, in the construction of the trestles placed amid-stream underneath the original bridge. This disposes of the third, fourth and fifth assignments of error, all of which assume that the court below should have taken the case from the jury.

The only remaining question relates to the admission of so-called expert testimony, in regard to the character of the trestles erected within the limits of the stream, tending to show negligence or lack of engineering skill in their construction.

The witness, the admission of whose testimony forms the basis of the first and second assignments of error, was an attorney at law, and also, as he testifies, a civil engineer. Was he a competent expert witness? His examination upon that subject elicited the following: "By Mr. Dickinson: Q. You are a member of the Delaware county bar? A. Yes, sir. Q. Are you also an engineer by profession? A. Yes, sir. Q. Did you have a technical training and course of technical education in engineering? A. Yes, sir. Q. And following your graduation from your college, did you afterwards follow the profession of engineering? A. Yes, sir, and do yet. Q. And still continue to do it. Have you had experience as an engineer in railroad engineering? A. Yes, sir. Q. And you are

connected— By the Court: You need not interrogate him further, unless he is objected to. By Mr. Dickinson: Do you want me to test him further? By Mr. Pinkerton: Oh, no. By Mr. Dickinson: Q. Mr. Howell, your training included bridge construction and the bridging of streams? A. From a railroad engineer's standpoint, yes, sir. Not the mechanical construction of them. Q. I mean the engineering problems connected with it. A. The location. Q. Have you made some measurements in connection with the railroad bridge over Chester creek. A. Yes, sir. Q. Now what is the span between the abutments? A. My measurement made it 110 feet. Q. What is the width of the stream? A. Why, about sixty-nine feet. Q. About sixty-nine feet—now did you examine the stream, the topography of the surrounding country and the general course and size of the stream with a view of considering the question of how much of a free passage should be allowed for water and ice accumulations on a stream in that locality? A. I was familiar with the general conditions and looked particularly at the place. Q. Mr. Howell, I wish you would tell us whether or not, in your judgment, it would be proper engineering, or at least whether it would be a proper construction, within that space of sixty-nine feet, to put up a number of trestles—say six trestles—which were set up at right angles to the tracks and not exactly in line with the course of the stream, and to permit a construction of that kind to remain in the stream? By Mr. Pinkerton: We object to that kind of a question. By the Court: That is sustained." The witness was undoubtedly a competent, expert witness.

Was the inquiry the subject of expert testimony? The testimony of the defendant's engineer sheds light upon this subject. Henry C. Smith, a civil engineer in the employment of the defendant company, was asked: " Q. Now, I wish you would tell me whether or not that bridge (referring to the bridge which was the subject of inquiry in the case), as you left it when you went away from there, was constructed with proper care and skill with regard to the landowners below it. A. Yes, sir, it was. Q. Was or was not the width of the bridge there sufficient to vent that stream at ordinary water? A. Ordinary flow, yes, sir. Q. Was it, or was it not, ample

for all ordinary freshets and floods? A. It was." And later, by Mr. Pinkerton: " Q. As I understood you to say—for I was a little confused by an interruption—I understand you, from your long knowledge of this bridge, that it was constructed according to the best engineering skill to meet any ordinary or probable demand on it, in view of the size of the stream and the watershed it contributed. A. It was, yes, sir. By the Court: Q. Now when you allude to construction, do you take into consideration the trestles that were in the stream? A. Yes, sir."

We are at a loss to understand why the court below, when the plaintiff's expert witness was upon the stand, rejected his testimony. It was the duty of the plaintiff to establish negligence. The witness had a knowledge of the surroundings and what was required to vent the water, the ice and other material passing down the stream, and his opinion, if favorable to the contention of the plaintiff, would have tended to establish negligence. After the defendant, however, had introduced testimony to negative the contention of the plaintiff, the court was clearly right in allowing the plaintiff to call Mr. Howell in rebuttal. It was not only right in itself, but was a very proper way of correcting the wrong done the plaintiff by sustaining the objection of the defendant to the admission of the witness's opinion originally, as an expert engineer. The competency of the witness, as an expert, being clearly established, it is very difficult to see why the defendant should be allowed to introduce expert testimony as to the character of the bridge, from the standpoint of the engineering skill involved therein, and that the same privilege should not be allowed to the plaintiff. In our view of the case, the testimony, when first offered, was entirely competent and should not have been excluded. This having been done, however, it was within the discretion of the court to allow it to be introduced in rebuttal.

We think the case was fairly tried. No exception is taken to the verdict and, from every point of view, we regard it as free from reversible error.

Judgment affirmed.