## In re Grand Central Surety Company.

*James A. Walker* and *Maurice Stern,* for petitioner.

*A. H. Wintersteen, amicus curiæ.*

GORDON, JR., J., Dec. 12, 1930.—This is a petition by the Grand Central Surety Company to be approved as surety under rules 37 to 43 of the rules of court. It is devoid of both technical and substantial merit. The petitioner is a corporation of the State of New York, and has received from the insurance commissioner of this state, under the Act of May 17, 1921 [P. L. 682], a cer-

tificate authorizing and empowering it "to transact the business of fidelity and surety in this Commonwealth." Having received this authorization to do business in Pennsylvania, the petitioner filed with the prothonotary its application to be approved as surety, and our auditors, after examination of the petitioner, disapproved the application and recommended that the petitioner be not accepted as surety. Notwithstanding this action of our auditors, the petitioner then filed the petition now before us, in which it prays that its application to be permitted to act as surety be approved by the court, basing its claim for our approval upon the provisions of the Act of June 29, 1923, P. L. 943. That act, which is an amendment of the Act of June 25, 1885, P. L. 181, is mandatory in its terms, and provides that whenever any bond with surety is required or permitted by law to be made and executed, all heads of departments, judges, prothonotaries, &c., "or other officer who is now or shall be hereafter required to approve the sufficiency of any such bond or undertaking, shall approve the same whenever the conditions of such bond or undertaking are guaranteed by a company duly authorized by the Insurance Department of this state to do business in this state, and authorized to guarantee the fidelity of persons holding positions of public or private trust, and whenever such company has filed, in the office of the prothonotary of the county in which the said bond is to be approved, a certificate issued by the insurance commissioner of the state authorizing it to become surety on all bonds, obligations and undertakings, and until such certificate has been revoked by the insurance commissioner.

"Such certificate shall be conclusive proof of the solvency and credit of such company for all purposes, and of its qualifications to be so accepted as sole surety, and its sufficiency as such."

The position taken by the petitioner is that, as it has been authorized by the insurance commissioner to do business in this state, the Act of 1923 requires us to approve and accept it as surety under all circumstances and regardless of our own judgment as to its actual responsibility or sufficiency to act as such. It must be admitted that if this unusual piece of legislation is constitutional and applies to all bonds other than those in which the Commonwealth is obligee, the contention of the petitioner has *prima facie* validity. When we consider the effect of the act, however, its dangerous character becomes apparent. By it the legislature has swept away the necessary and essential protection which the exercise of judicial judgment and discretion in the examination and approval of sureties gives to those for whose benefit such obligations are required and converts an important judicial duty into the purely ministerial act of accepting bonds regardless of the sufficiency and reliability of the surety therein. Indeed, the act goes further and even deprives obligees in bonds of the right to protect themselves from irresponsible and worthless companies by examination and protest of the surety offered, for the certificate which the insurance commissioner issues under it is made conclusive evidence of the sufficiency of the surety. It is impossible to believe that this consequence of the operation of the Act of 1923 was recognized by the legislature when the act was adopted, and we are warranted, therefore, in carefully considering its meaning, its scope and its manner of enforcement before giving effect to it in the form demanded by the petitioner. It is so revolutionary in character that all phases of the proceeding may be justly scrutinized.

Considering, first, therefore, the purely technical phases of the proceeding, it may be observed that there is no warrant in law for the granting of the prayer of this petition. Approval of a surety by a court or judge is an individual and separate act in each case, and the rules of court relating to the

examination of corporations desiring to become surety and their approval by our auditors constitute a system adopted by us as an aid in the exercise of our judicial function of approving sureties whenever they present themselves in a particular matter. Of course, the approval of proposed sureties by our auditors creates no legal obligation upon us to accept their approval as final. They are merely advisory agents of the court. They have no other function or effect, nor is there any other legal effect or significance to their expressed recommendation. The system created by our rules is merely one step in our method of exercising the judicial function of approving sureties, which is confided to us by many acts of assembly. We may approve and accept a surety without invoking the aid of our auditors; or, on the other hand, we may decline to approve and accept a surety which our auditors have recommended. Indeed, we may at any time abolish the examination of proposed sureties by our auditors and adopt in its stead other means to secure the information necessary for the exercise of the function of approval as may seem best to us. Whatever list is kept by the prothonotary of approved sureties is one of convenience only, and there is, therefore, no legal right in any one to be placed upon any eligible list that may be compiled by the courts or the judges who compose them. All that this company can ask, if indeed it may ask anything under the act in question, is that in a particular case it be approved by reason of the certificate of the insurance commissioner, notwithstanding, perhaps, the judicial disapproval of its sufficiency by the officer to whom it presents itself for approval. It cannot demand either that our auditors, in whose judgment we have confidence, shall approve that which they do not approve or that we shall give it, by a general and all-embracing decree, a blanket approval which even this law neither authorizes nor requires us to give.

Again, this petitioner would have no standing to require us to accept it as a surety even if the act were applicable and binding upon us. The only person legally injured by the refusal of a court to approve and accept a particular surety is the obligor tendering it. Until accepted, the surety has no interest in the matter which is enforceable at law, although a refusal to accept it under circumstances in which the law requires it to be accepted might work a redressible legal injury to the obligor in the bond.

Passing now to a consideration of another defect in the petition, it will be noted that the certificate which the act requires to be filed in the office of the prothonotary, and requires us to accept as conclusive proof of the sufficiency of the surety, has neither been filed in the office of the prothonotary nor does it appear that such a certificate has been issued to this petitioner by the insurance commissioner. The mandate of the act comes into operation only when two conditions have been met by the surety company: First, that it has been authorized to do business in the Commonwealth, and, second, that it shall have "filed in the office of the prothonotary . . . a certificate issued by the insurance commissioner of the state, authorizing it to become surety on *all* bonds, obligations and undertakings." The certificate contemplated by this act is obviously a special authorization, the scope of which will be discussed later, and which must be secured and filed with the prothonotary before the act becomes operative. The only certificate which the petitioner here shows that it has received from the insurance commissioner is that issued under the Act of 1921, in which it is only generally authorized to transact "the business of fidelity and surety" in this Commonwealth, and even this has not been filed in the office of the prothonotary, but was merely exhibited to our auditors at the time of their examination of the company. The petitioner has, therefore, failed to bring itself even within the necessary provisions of the Act of 1923

by securing from the insurance commissioner the certificate required by the act.

Indeed, we seriously doubt whether the insurance commissioner would, upon his official responsibility, issue to this or to any surety company the certificate which the act requires as a prerequisite to approval of sureties under it. The act, it will be noted, confers no power upon the commissioner to limit or circumscribe the extent to which the right of surety may be exercised. The certificate which he must issue to bring into operation the provisions of the act is all-embracing and unlimited in its scope, and no right is conferred upon the commissioner to issue a limited or qualified certificate. He cannot limit the amount to which the surety shall be accepted in a single transaction; he cannot restrict it to becoming surety upon bonds of a particular class; he cannot limit the number of bonds or the total amount of obligations that the surety may undertake. To meet the requirements of the certificate contemplated by this act, the insurance commissioner must empower a company to go on "all" bonds, without restriction or limitation. The effect of the issuance of such a universal certificate would sweep away all those salutary checks and safeguards which the idea of judicial approval involves and would jeopardize the unlimited number of bonds on which such a surety company might appear. We do not believe that any insurance commissioner who fully realized the import and consequences of his act would venture to give such a blanket authority to the most stable of bonding companies. The risk involved would be too great and would be challenged by the importance of the responsibility put upon him, and, until such a certificate is issued, this act does not come into operation.

The very case before us is an example of the evils to which this legislation would inevitably give rise. Our auditors report that their examination of this petitioner discloses that it has been barely a year in business; that its capital and surplus amount to $350,113.26; that, under the laws of its home state, approximately $200,000 of its assets, in the form of securities, has been deposited at Albany, New York, leaving an available working capital of approximately $150,000; that the insurance commissioner of New York has as yet made no examination as to the conduct of the business of the petitioner or investigation as to the condition of its affairs; that on May 31, 1930, approximately five months after it began business, it had already rendered itself liable as surety to the extent of over a million and a half dollars; that the last examination of it by a committee of its own directors occurred on Dec. 23, 1929, before it had even started to do business; that the largest portion of its business consists of becoming surety on bail bonds in criminal cases, a type of business generally considered undesirable by the older and stronger established companies; and that inquiries among other substantial companies of large experience indicate that such companies would not place their reinsurance with one of the financial structure of this petitioner. In the face of these disclosures, the conclusion of our auditors declining to recommend the approval of this petitioner was fully justified, even though, under our practice, no company, however strong, is taken as surety in any single transaction in an amount in excess of 10 per cent. of the paid-in capital and surplus, which in the case of this petitioner would be $35,000. Would the insurance commissioner have issued to this petitioner the certificate required by this act, authorizing it to go without limit upon all bonds and obligations, had the petitioner requested such a certificate from him? We do not think so.

Any one of all the defects in the petitioner's case, as pointed out above, would require us to refuse the prayer of the petition, without considering the

394

further serious constitutional questions involved in the case. Judge Penrose of our Orphans' Court, in a learned opinion handed down on Nov. 30, 1895, in the matter of the American Banking and Trust Co., 17 Pa. C. C. Reps. 274, discussed the constitutionality of the Act of June 26, 1895, P. L. 343, which, like the act before us, was an amendment to the Act of 1885, and which was aimed at the same purpose as the Act of 1923. In that opinion Judge Penrose set forth powerful and persuasive reasons for holding the Act of 1895 unconstitutional. We do not deem it our duty, however, to pass at this time upon the constitutionality of the Act of 1923. It is not before us because of the defects in the petition already pointed out. It will be sufficient to observe, however, that while the legislature may perhaps have the power to relieve the courts of the duty of approving bonds in matters within their jurisdiction, yet it is fundamental in our law that, when the exercise of a judicial function is confided to a court, the legislature is without power to control the exercise of that function: Article V, section 1, of the Constitution of Pennsylvania; Richards v. Rote, 68 Pa. 248; Com. v. Halloway, 42 Pa. 446; Hendrickson's Estate, 19 Legal Intell. 372; De Chastellux v. Fairchild, 15 Pa. 18; Pittsburgh & Steubenville R. R. Co. v. Gazzam, 32 Pa. 340; Com. v. J——, 21 Pa. C. C. Reps. 625. It is a contradiction in terms to place upon one the duty of deciding and then to direct what decision shall be given. The duty of approving bonds is conferred upon the courts by many acts of the legislature. Replevin bonds, appeal bonds, property claim bonds, bonds of guardians, trustees, and many others that might be named, are provided for by numerous legislative enactments, all of which confide to the courts the responsibility of approval of such sureties. It is difficult to believe that it was the intention of the legislature in the passage of the Act of 1923 to repeal these numberless acts, and to create an entirely new system for the approval of bonds of all kinds by transferring that duty from the courts to the insurance commissioner. Yet this is precisely the effect of the Act of 1923, if we give it the interpretation contended for by this petitioner. Such a purpose being undeclared, either in the title or in the body of the act, the only other light in which it can be viewed is as an effort by the legislature to control the exercise of a discretionary and judicial power which it leaves in the hands of the judges. That, it is well settled, is beyond the power of the legislature. A different situation would have been presented had the act made the certificate *prima facie* evidence of the sufficiency of the surety, for in that case the legislature would have been dealing with a matter of evidence merely, and would have left to the court the ultimate decision of the facts according as all the evidence before it might establish. As we have indicated, however, the question of the constitutionality of the act is not now before us, and is, therefore, not decided.

For the foregoing reasons, the petition of the Grand Central Surety Company is dismissed.