## Nelson's Contested Election.

*School law—School districts—Independent school district—Mercer school · district—Acts of May 8, 1854, P. L. 617, May 8, 1855, P. L. 509, May 13, 1856, P. L. 574, and April 11, 1862, P. L. 471—Election of school directors.*

The Mercer school district, formed under the Act of May 13, 1856, P. L. 574, out of the borough of Mercer and the parts of three adjoining townships, is in fact an independent school district within the meaning of the Act of May 8, 1855, P. L. 509, and is governed in its election of school directors by the Act of April 11, 1862, P. L. 471.

Argued May 17, 1907.   Appeal, No. 98, April T., 1907, from order of Q. S. Mercer Co., April T., 1906, No. 34, dismissing petition in election contest In re Election of R. N. Nelson and R. C. Kerr, School Directors of Mercer School District.   Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Petition to avoid the election of school directors in Mercer school district.

The opinion of the Superior Court states the case.

The court in an opinion by WILLIAMS, P. J., dismissed the petition.

*Error assigned* was order dismissing the petition.

*James D. Emery*, with him *A. B. Thompson*, for appellants, cited: Williams v. Crook, 17 Pa. 199 ; Colvin v. Beaver, 94 Pa. 388.

*B. Magoffin*, for appellee, filed no printed brief.

OPINION BY BEAVER, J., October 7, 1907 :

By the Act of May 13, 1856, P. L. 574, entitled, " An act authorizing the citizens of the borough of Mercer to erect a union school house in said borough," it was enacted " that all that territory lying within the following bounds," which are fully set forth therein and said to constitute parts of three several townships adjacent to, and outside of, the limits of the borough of Mercer, " shall hereafter form a new school district and be known by the name of the Mercer school district, which said district shall possess all the rights and privileges and be subject to all the restrictions contained in the school laws of this commonwealth, except so far as the same is modified by this act."

On May 8, 1855, P. L. 509, an act, entitled, " A further supplement to an act for the regulation and continuance of a system of education by common schools, approved the eighth day of May Anno Domini one thousand eight hundred and fifty-four," provided for the establishment of independent school districts, in which it is provided : " Section 6. That whenever

a new district shall be erected, according to the provisions of this act, it shall become, to all intents and purposes of the common school system of the state, a separate and independent district," etc.

In the ninth section of the Act of April 11, 1862, P. L. 471, it is provided: " That in independent districts, established or hereafter to be established by the legislature, without specifying the mode, time or place of electing directors, the first election shall be held at such time and place, within the proper district, as shall be specified by written or printed notices thereof, put up at not less than ten public places therein, signed by not less than five taxable citizens thereof, and giving ten full days' notice of such election, and subsequent elections shall be held at such time and place annually as shall be designated by similar notices, signed by the president and secretary of the proper board; said elections, in all other respects, to be held and conducted in the manner in this section before provided."

An election for school directors in the district established by the special act of 1856, was held on February 20, 1906, at the general municipal election in the borough of Mercer. The appellees are R. N. Nelson and R. C. Kerr, who claim to have been elected school directors of the aforesaid special district at this election. The certificate of election was signed by " the judge and inspectors of an election held in the borough of Mercer, in the county of Mercer."

It appears from the testimony taken at a former hearing, on an application for a writ of quo warranto, which by consent was incorporated in the record of this case, that the borough of Mercer is divided into two election districts; that the usual notice of election in the borough included school directors for the special district; that there was no separate polling place and usually no separate ballot box for receiving the votes for school directors; that school directors were usually nominated by the caucuses of the several political parties within the borough and that the persons from the several townships outside the limits of the borough composing the special district voted for school directors by using the usual municipal ballot. There does not seem to have been any special designation as to the polling place in the borough at which the citizens of the district outside its limits should vote. It will thus be seen that

the inhabitants of the several townships outside the borough had practically no voice in the choice of the candidates for school directors of the district in which they resided; that, if they voted at the municipal election for school directors, they were compelled to use the ballot containing the names of officers to be chosen for the borough, and that there was no special designation as to the polling place at which they should vote. There was, therefore, a double inducement for illegal voting: first, as to the municipal officers to be elected, for whom, of course, the inhabitants of the several townships had no right to vote, and, secondly, as to the voting at both of the polling places instead of one, it being assumed that they were permitted to vote at either one or the other.

Is there no escape from this anomalous condition of affairs? Is there no way of avoiding the temptation and inducement to wrongdoing, under the guise of a legal right? It seems to us that the demands of the law must be strict and unyielding, under which such an election should be held valid. It is true that the school district created by the special act of May 13, 1856, might have been created under the general law of May 8, 1855, by the court of common pleas of Mercer county, under ordinary conditions, but it must be remembered—and this is very significant—that special powers were sought and given, by the special act, to the commissioners appointed therein to carry out the provisions thereof in relation to the organization of the new district thereby created.

For example, in the second section of the special act, it was provided: " That the property, real and personal, of the Mercer Academy and of the common school districts, as existing within the limits of the said new district and of the Mercer Female Institute, be converted into money to the best advantage, and appropriated to the erection of a suitable building for a union school, and that Joseph Kerr, Samuel Geibner and William M. Stephenson be commissioners to sell and convey said property for said purpose and to take charge of the moneys or securities for moneys and all funds belonging to said academy, common school and female institute, and appropriate the same to the purpose aforesaid."

Other special provisions were contained in the act which could not have been provided for in a decree of the court of

common pleas, as, for example, in the seventh section, it was
provided : that " all students pursuing classical studies may be
required to pay the prices usual for such branches in academies
or private schools, also for those branches denominated orna-
mental, such as painting and drawing and instrumental music ;
foreign modern languages may also be taught in said school,
but to be considered extra and to be paid for by the persons
receiving instruction in them."

It was also provided in the eighth section : " That the female
department in the higher branches shall be under the separate
superintendence of a competent female principal, and shall be
subject to the visitation and control of the executive committee
of the Mercer Female Institute, as now organized."

These and other provisions clearly show why application was
made to the legislature instead of to the court, under the gen-
eral act of 1855.

It is argued that, because the legislature did not, in the act
of 1856, use the words " independent school district " and
chose to use the words " new district," it was, therefore, not
an independent school district within the meaning of the act
of 1855, and that of 1862, which provides for the election of
school directors in the ninth section, as above cited.

What was the new district created by the act of 1856 ?   It
was a separate district.    It was independent of territorial limits,
as previously established by the several municipalities from
which it was carved.    It had all the attributes of an independent
district, as provided in the general act of 1855, and, by the very
terms of the act creating it, possessed " all the rights and privi-
leges . . . . contained in the school laws of this common-
wealth," of which that act was a part.   Surely it was in fact
an independent district regardless of what it was called in the
act which created it and, in our opinion, the act of 1862, pro-
viding for elections of directors " in independent districts es-
tablished or hereafter to be established by the legislature," ap-
plied thereto.   It is the legal entity created by the act rather
than the name by which it was called which should determine
its status.

Sections 5 and 6 of the general school law of May 8, 1854,
P. L. 617, unquestionably apply to the election of school di-
rectors for school districts which are coincident and contermi-

nous with municipal divisions, such as townships, wards, boroughs or cities. This seems to us plainly apparent from the language of the act, which is in part: " But in districts where directors have not been elected, or in new districts which may be established by the erection of a new ward, borough or township, six directors shall be elected in such districts," etc. Nothing whatever is said about a district composed of more than one municipal division. It seems to us unreasonable to impute to the legislature the intention of either disfranchising the inhabitants of the parts of the three outlying townships which compose part of the district or of bringing those inhabitants, without legal notice and without the right to vote for other officers in the borough at a regular municipal election, to vote for school directors, in whose selection as candidates they had no voice, and where the other practical difficulties as to the determination of their qualifications, etc., were of such a fundamental character.

As already intimated, at which of the two polling places should they vote? How was this to be determined? The right to vote at a municipal election depends upon the residence of the voter, but in this case the voter from one of the outlying districts would not be a resident of the ward or election district in which he voted. If he had a right to vote in either, what was to prevent him from voting in both? If his right to vote is recognized, how should a ticket be provided? There would seem to be no legal authority, under our present election laws, for providing such a ticket. As a matter of fact, as appears by the testimony, the usual borough ticket was used. What was to prevent the voter from the township voting for the candidates for each office contained thereon? So many and such serious questions touching the purity of the ballot and the rights of citizens are raised by the decree of the court below, that we are constrained to hold that the legislature could not have intended to aim such a serious blow at the fundamental right of suffrage as is implied by this decree, even if the difficulties of interpretation as to the special act were much more serious than upon examination they prove to be.

All these serious difficulties are obviated by holding that, when the legislature, by the special act of 1856, created this important new school district, it intended it to be, as it actually was, a separate and independent school district, possessing all

the attributes and " all the rights and privileges " of a new district created by the court of common pleas, under the general act of May 8, 1855, which, in its sixth section, provides, that " Whenever a new district shall be erected according to the provisions of this act, it shall become, to all intents and purposes of the common school system of the state, a separate and independent district."

The court below has given much thought and careful consideration to the question herein involved, and we have read its opinion with care and considerable interest, but we are unable to agree with the conclusion reached, that the election of the appellees, Nelson and Kerr, was held in a lawful manner.

It is, therefore, adjudged and decreed that the order of the court, declaring that, " after due consideration, it appearing to the court that there was no illegality in the said election for school directors, held on the third Tuesday of February, 1906, said election is hereby confirmed," be and the same is hereby reversed, the election of R. N. Nelson and R. C. Kerr as school directors at said election is declared null and void, and the record is remitted to the court below, to the end that a special election under the provisions of the ninth section of the act of April 11, 1862, may be held, upon proper notice.