## Richards *versus* Rote.

1. In proceedings in partition in the Orphans' Court, in order to divest the interest of any person, it is necessary that such person should be named in the petition, decree and notices.

2. The 2d section of Act of April 14th 1835, makes this necessary to invest the court with jurisdiction over the person and his interest in the land.

3. When in proceedings in partition in the Orphans' Court the name of a party in interest does not appear in the petition, decree and notices, unless it appear by affidavit that his name was unknown and publication made accordingly, his share or estate will remain undivided or undivested unless by some subsequent act of such party it has been ratified.

4. When the name does appear, it will be conclusively presumed that due notice has been given, even though not affirmatively shown in the record.

5. In proceedings in the Orphans' Court, although it appear that a party is incompetent to manage his affairs, that court has no jurisdiction to appoint a trustee for him in the estate proceeded in.

6. The Orphans' Court appointed a trustee for a party of "weak intellect;" the notices, &c., in partition were served on the trustee for the party. An Act of Assembly was passed to validate the proceedings. *Held*, that the act was void.

7. When property has been attempted to be taken by a judicial proceeding which is void for want of jurisdiction, the legislature cannot validate it.

8. A law for that purpose would be essentially a judicial act.

[Richards v. Rote.]

March 30th 1871. Before THOMPSON, C. J., READ and SHARS-WOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Clinton county*: Of January Term 1871.

This was an action of ejectment by Griffin Rote against Lewis Richards: the writ issued April 18th 1870.

Casper Richards, the father of the plaintiff, died in November 1832, having made his will, in which was the following provision: " And whereas, my son Lewis Richards is incapable of managing property for himself, I will that he shall be paid one thousand dollars, which shall remain in the hands of my sons William and Daniel during his natural life, and that he be paid the interest of that sum each and every year after my decease by my sons William and Daniel, the interest and principal to be paid by them in the same proportion each as the payments before mentioned."

William Richards (above named) died, July 20th 1850, intestate, unmarried and without issue, seised of the tract of land in dispute, and leaving to survive him four brothers, Lewis the defendant, Daniel, Joseph and James.

At February term 1852, Daniel Richards, a brother and the surviving trustee, petitioned the Orphans' Court, setting forth the foregoing clause in the father's will, the death of William, that Lewis would be entitled to one-fourth of William's estate, real and personal; that no one had been appointed trustee of the fund devised to the said Lewis Richards by his said father to supply the vacancy occasioned by the death of the said William Richards, nor to take charge of his interest in the estate of the said William Richards, deceased: and praying the court to appoint a trustee for that purpose.

Upon this petition the court made the following order: " February 18th 1852, the within petition being read, the court appoint Saul McCormick trustee of the estate of Lewis Richards, agreeably to the prayer of the petitioner."

Saul McCormick and Daniel Richards having died, Samuel Richards, administrator, &c., of William Richards, May 11th 1857, petitioned the court, setting forth the facts in the petition of Daniel; the death of Daniel and McCormick, and praying the court to appoint a trustee in the place of McCormick. Griffin Rote, the plaintiff, was appointed trustee.

On the 18th of December 1857, Samuel Richards having become the owner of all the interests in the land in dispute, except that of Lewis, petitioned in the Orphans' Court for an inquest for partition of the estate of William Richards, deceased, setting out amongst other things, that " Lewis, on account of the weakness of his intellect, is under charge of the Orphans' Court of this county, the said court having appointed Griffin Rote as a trustee to take charge of the estate of the said Lewis Richards," &c.

[Richards *v.* Rote.]

On the same day, "Inquisition awarded, returnable first day of next term, twenty days' notice to be given to Griffin Rote, trustee, &c." Appended to the sheriff's return was the following : "I hereby acknowledge to have received from the sheriff due and legal notice of the meeting of the jury of inquest to be held in pursuance of the within order, &c. * * *    GRIFFIN ROTE,

Trustee of Lewis Richards."

The inquest returned that the estate could not be divided, and valued it at $9813.12. The inquisition was confirmed, June 18th 1858, and rule upon heirs awarded. To this rule the sheriff returned as follows: "February 25th 1858. Served the within rule on Samuel Richards by reading the same in his hearing. March 1st 1858. Served on G. Rote, committee of Lewis Richards, by reading the same in his hearing.

So ans. THOS. McGHEE, Shff."

On the 18th of September 1858, Samuel Richards elected to take the estate at the valuation, and it was on that day adjudged to him. On the 21st of March 1864, Samuel Richards conveyed to the plaintiff. On the 6th of April 1870, this Act of Assembly (Pamphlet Laws 960) was passed :—

"An Act to validate certain proceedings in partition.

"Whereas, Proceedings in partition of the real estate of William Richards were had in the Orphans' Court of Clinton county between Samuel Richards and Lewis Richards, upon the petition of the said Samuel Richards, the writ, notice and rules in which were served upon Griffin Rote, a trustee of the estate of Lewis Richards, appointed by the said Orphans' Court, therefore :

"Sect. 1. Be it enacted, &c., That the said proceedings in partition and the title of the said Samuel Richards, his heirs and assigns thereunder, shall be valid, to all intents and purposes, as if regular in all respects, and the writs, rules and notices had been served personally upon Lewis Richards or some person legally qualified."

After giving in evidence the foregoing matters, the plaintiff closed his case. The defendant demurred to the evidence and requested the court to instruct the jury to find a verdict for the defendant, on the ground that the proceedings in partition, so far as it concerned the interest of Lewis Richards in the real estate of William Richards, were void and were not cured by the Act of Assembly, as it was unconstitutional. The court (Williams, J., of 4th district) declined to pass upon the question of the constitutionality of the Act of Assembly, considering that it was the province of the Supreme Court to determine that question, overruled the demurrer and directed the jury to render a verdict for the plaintiff. The verdict was for the plaintiff, and the defendant sued out a writ of error, assigning for error the overruling his demurrer and directing a verdict for the plaintiff.

[Richards *v.* Rote.]

*J. Chatham* (with whom was *C. S. McCormick*), for plaintiff in error.—The judgment of any court can be binding only when it appears that the person or property over which it assumes control was within its jurisdiction: The Mary, 9 Cranch 126; Ragan's Estate, 7 Watts 438; Ege *v.* Sidle, 3 Barr 115; McKee *v.* McKee, 2 Harris 231; McNeal *v.* Holbrook, 1 Casey 189; Delaney *v.* Gault, 6 Id. 63; Kennedy *v.* Wachsmuth, 12 S. & R. 171; Dicks *v.* Hatch, 10 Iowa 380; State *v.* Culler, 18 Md. 418; McMinn *v.* Whelan, 27 Cal. 300; Evans *v.* Ashby, 22 Ind. 15; Torrance *v.* Torrance, 3 P. F. Smith 510; Act of March 29th 1832, § 2, Pamph. L. 190, Purd. 764, pl. 4.

The Act of April 6th 1870 is in violation of the 8th section of the 11th Article of the Constitution, Amendment of 1864, in that the title of the act does not clearly express the subject contained in it: Walker *v.* Caldwell, 4 L. Ann. R. 298; People *v.* Mahaney, 13 Mich. 494; Sun Mutual Insurance Co. *v.* Mayor, &c., of New York, 8 N. Y. 253; State *v.* County Judge, 2 Iowa 282; Blood *v.* Mercelliott, 3 P. F. Smith 395; Brewster *v.* City of Syracuse, 19 N. Y. 116.

The act is in violation of the Bill of Rights, which declares that no man can be deprived of his property unless by the judgment of his peers and *the law of the land*, and that all courts shall be open, and every man, for an injury done him in his lands or goods, shall have remedy by *the due course of law*, and right and justice administered without sale, denial or delay: Brown *v.* Hummel, 6 Barr 86; Ervine's Appeal, 4 Harris 257; Grenawalt's Appeal, 1 Wright 99; Cooley on the Constitution 107; Newland *v.* Marsh, 11 Ill. 382; Norman *v.* Hiest, 5 W. & S. 171; Menges *v.* Dentler, 9 Casey 495; Grim *v.* Weissenburg School District, 7 P. F. Smith 437; Baggs's Appeal, 7 Wright 512; Burns *v.* Clarion County, 12 P. F. Smith 425; Alter's Estate, 17 Id. 341; Denny *v.* Mattoon, 2 Allen 361; McDaniell *v.* Correll, 19 Ill. 226.

—— *Corss* (with whom was *G. W. Hecker*), for defendant in error.—The want of a guardian does not render the proceedings void if it appears that the infant was represented in fact at the time of the valuation: Elliott *v.* Elliott, 5 Binn. 1.

It is not necessary to establish lunacy by inquisition of lunacy. If done in any way to satisfy the court it is sufficient. Inquisition of lunacy is only persuasive evidence: Tazier *v.* Saturlee, 3 Grant's Cases 162; Rex *v.* Rex, 3 S. & R. 533; Taggart *v.* McGinn, 2 Harris 157; Lycoming *v.* Union, 3 Id. 166.

The opinion of the court was delivered, May 18th 1871, by

SHARSWOOD, J.—However it may have been before April 14th 1835, the 2d section of the Act of Assembly of that date, Pamph. L. 275, made it essential in order to divest the interest

of a child or other person, by proceedings in partition in the
Orphans' Court, that each child or person should be named in the
petition, decree and notices. It provides that "in the pro-
ceedings for the partition and valuation of an intestate's real
estate, the parties in interest shall be named in the petition,
decree and notices when known, but if it shall appear on oath or
affirmation that the names or residences of any of the parties
are unknown to the applicant for the partition, the Orphans'
Court shall have power to direct such notices to be given to such
parties, by publication in public newspapers, describing the par-
ties as far as practicable, as shall appear to the court to be
reasonable and proper; and the proceedings shall be as effectual
to all intents and purposes, as if all the parties had been named
in the proceedings." It is very clear that this provision is not
merely directory, but is made necessary to invest the court
with jurisdiction over the person and the interest which may be
in him in the land. It has been so held by this court in a case
entirely parallel. By the 15th section of the Act of February
24th 1834, Pamph. L. 75, giving jurisdiction to the Orphans'
Court to decree the specific performance of the written contract
of a decedent for the sale of real estate, upon the application
either of the purchaser or of the executors or administrators of
the decedent, it was enacted that "after due notice of such bill
or petition to the purchaser or to the executors or administrators
and heirs of the decedent or devisees of such estate, as the case
may require to appear, in such court, on a day certain, and
answer such bill or petition if there be cause, such court shall
have power * * * to decree specific performance." It was held
in McKee *v.* McKee, 2 Harris 237, that if it appear from the
record that such notice was not given, the proceedings are void.
This determination was not based upon the mere order of colloca-
tion of words in the law, which it might have been argued
made the power of decree to be "after," and therefore dependent
upon the fact of notice, but upon the broad general principle,
that before the rights of an individual can be bound by a judicial
sentence or decree, he shall have notice of the proceeding against
him, or an opportunity to be heard. At all events when the law
makes provisions by which such opportunity may be afforded, it
must not appear to have been wholly disregarded. "Such notice,"
said Mr. Justice Bell, "is indispensably necessary to give juris-
diction over the person of the party, and it has been truly said,
that without citation and an opportunity of being heard, the
judgment of a court, whether ecclesiastical or civil, is absolutely
void:" Com. *v.* Green, 4 Whart. 568. He adds: "The power
to divest men of their estates and transfer them to others is a
momentous one to be exercised with great care and caution.
Before it can be made effective, the court must possess itself not

[Richards v. Rote.]

only of the subject, but of the person whose interests are to be dealt with." In McKee v. McKee, as well as in Ragan's Estate, 7 Watts 441, the case of Jackson v. Brown, 3 Johns. 459, is referred to with approbation. It was there held that when one of several tenants in common had aliened his share, and the plaintiff in an action of partition proceeded as if no such alienation had been made, by giving notice to the original co-tenant, without taking notice of the grantee, the judgment was void. The Acts of Assembly of New York, on which that decision was based, are in their terms like that of 1835, merely directory. There are no doubt many proceedings in the Orphans' Court which are not adversary, and where the absence of notice, though an error and an irregularity, will not render the decree void, so as to be impeachable collaterally. In Elliott v. Elliott, 3 Binn. 1, it was held that a proceeding for partition in the Orphans' Court was not like an adversary suit at common law, where an infant defendant must appear by guardian or it is error. But neither of the Intestate Acts of 1705 or 1764, under which it appears that the proceedings in that case had taken place, directed that a guardian should be appointed for minors interested in a partition or appraisement of real estate in the Orphans' Court. So in Rex v. Rex, 3 S. & R. 533, it was held that under the practice of the Orphans' Court, it was not an objection to an award of an inquest for partition of an intestate's estate, made on the petition of one of the heirs, that it was done without notice to the widow or other children. But the law under which that proceeding was had did not require notice. Nor, as stated by Mr. Justice Duncan, could any injustice be done; for any objection which would have been available to prevent the award of the inquest, might be made to the confirmation of the inquisition when returned. It is evident that notice at some stage of the proceeding before final decree was regarded as necessary, though not mentioned in the Act of April 19th 1794, 3 Smith 143, nor any supplement thereto. The Act of 1835 was evidently passed for the very purpose of supplying what was a glaring defect in the existing law. We hold then that when the name of a party in interest does not appear in the petition, decree and notices, unless it appears by affidavit that his name was unknown, and publication made accordingly, his share or estate will remain undivided or undivested, if there is a sale ordered, unless by some subsequent act or conduct of such party or those claiming under him, it has been ratified. When the name does appear, it will be conclusively presumed in favor of the regularity of the proceedings of a court of justice, that due and regular notice has been given, even though it is not affirmatively shown in the record, but when his name is not there, or that of a stranger who has no right to

represent him is in his place, there is no room for any such presumption.

We are of opinion, therefore, that, for anything that appeared in the evidence, the interest of Lewis Richards in the premises in suit was not divested by the proceedings in partition. He was not named as a party in the petition, decree or notices, but Griffin Rote as a trustee for him. Griffin Rote was not a trustee of Lewis Richards, so far as the land mentioned in the partition was concerned. Casper Richards, the father of Lewis, by his last will had bequeathed to him the sum, one thousand dollars, which was to remain in the hands of his brothers, William and Daniel, the interest to be paid to him for life. William subsequently died intestate, leaving real and personal property, of which Lewis was entitled to one-fourth part. Thereupon Daniel applied by petition to the Orphans' Court, praying for the appointment of a trustee, "to supply the vacancy occasioned by the death of the said William Richards, and to take charge of his (Lewis's) interest in the estate of the said William Richards, deceased." Whereupon the court appointed Saul McCormick "trustee of the estate of Lewis Richards, agreeably to the prayer of the petition." This, of course, was an oversight in the court, or they would have confined the appointment to the trust created by the will of the father. Afterwards, Griffin Rote was appointed trustee in the place of Saul McCormick, deceased.

Admitting all that is contended for on the part of the defendant in error, that Lewis Richards was a man incompetent to manage his own affairs, of which there was no legal evidence, that certainly gave the Orphans' Court no jurisdiction or authority to appoint a trustee for him for the estate which had devolved upon him under the intestate laws from his brother William. Griffin Rote as to that property was a mere stranger—he had neither title, interest nor authority to represent Lewis Richards. The sheriff returned to the rule on the heirs to accept or refuse, "Served on G. Rote, committee of Lewis Richards, by reading the same in his hearing." He was not, however, his committee, as the petition for the inquest itself showed, for it recited that "Lewis, on account of the weakness of his intellect, is under charge of the Orphans' Court of this county, the said court having appointed Griffin Rote as a trustee to take charge of the estate of the said Lewis Richards." But there is no law or semblance of a law to authorize the Orphans' Court to take charge of persons of weak intellects and appoint trustees of their estates. Griffin Rote had not even color of authority to represent Lewis Richards. His estate or interest in the premises remained therefore entirely undivested by the sale, which took place upon the refusal of the other heirs or their grantee to accept the estate at the val-

uation. Lewis, though a known party, had no notice; no opportunity to object; no opportunity to accept.

Nor can the Act of Assembly of April 6th 1870, Pamph L. 960, entitled "An Act to validate certain proceedings in partition," have any effect upon the title of Lewis Richards. Without pausing to inquire into the soundness of the objection which has been made to the title, as not being in accordance with the constitutional provision which requires that "the subject shall be clearly expressed in the title," (first amendment of 1864), we hold that the act itself is unconstitutional and void, as an infringement of the inhibition contained in the 9th section of the declaration of rights, art. ix. of the Constitution, that no person "can be deprived of his life, liberty and property, unless by the judgment of his peers or the law of the land." What is this act but a mere bald attempt to take the property of A., and give it to B. ? At the date of the passage of the act, Lewis Richards had an undivided share—a fourth part of the land in question—and by the legislative fiat validating these proceedings in partition, which the law then pronounced a nullity as far as his estate was concerned, this undivided share is divested from Lewis Richards and vested in Griffin Rote, who figured as a trustee in the partition. The preamble to the act shows indeed, that the legislature was deceived; for it recites that the writ, notices and rules in the proceeding were served on Griffin Rote, "a trustee of the estate appointed by the said Orphans' Court." Literally this was perhaps true, but doubtless the legislature inferred, as they naturally might, that the estate of Lewis Richards was in trust, and Griffin Rote a lawfully appointed trustee. Nor do they appear to have been informed that it was the title of Griffin Rote, the trustee, which they were asked to validate; if they had been, probably they would have inquired more particularly into the circumstances. The act declared valid the title of Samuel Richards, the purchaser at the Orphans' Court sale, and his heirs and assigns. But had the title of the act been full and particular; had the preamble recited the true difficulty, the entire want of authority in Griffin Rote to represent Lewis Richards; and had the enacting clause confirmed the title of Griffin Rote, derived under the proceedings, the act would still have been ineffectual for the purpose for which it was designed. It was not a case in which the mere irregularity of a judgment or a formal defect in the acknowledgment of a deed was cured, where the equity of the party is complete and all that is wanting is legal form. Such were Underwood v. Lilly, 10 S. & R. 97; Tate v. Stooltzfoos, 16 S. & R. 35; Satterlee v. Matthewson, 16 S. & R. 191; and Mercer v. Watson, 1 Watts 330. On the contrary it is very clearly within the principle of Norman v. Heist, 5 W. & S. 171; Greenough v. Greenough, 1 Jones 489; De Chastellux v. Fairchild, 3 Harris

[Richards *v.* Rote.]

18; Menges *v.* Dentler, 9 Casey 495; Baggs's Appeal, 7 Wright 512; Schafer *v.* Eneu, 4 P. F. Smith 304; Shonk *v.* Brown, 11 P. F. Smith 320. These cases abundantly sustain the position that an act of the legislature cannot take the property of one man and give it to another, and that when it has been attempted to be taken by a judicial proceeding, as a sheriff's sale, which is void for want of jurisdiction, it is not in the power of the legislature to infuse life into that which is dead, to give effect to a mere nullity. That would be essentially a judicial act,—to pronounce judgment—to usurp the province of the judiciary—to forestall or reverse their decision.

Upon the conclusion of the testimony of the plaintiff below, the defendant demurred to the evidence, the court overruled the demurrer and directed the jury to find a verdict for the plaintiff. He had undoubtedly shown a good primâ facie title to three-fourths of the tract which he might enforce by ejectment if there had been an ouster by the defendant. No point has been made upon this view of the case. We deem it best, therefore, to enter no judgment upon the demurrer, but to reverse the judgment and award a *venire facias de novo*.

Judgment reversed, and a *venire facias de novo* awarded.