# Claysville Borough School District *v.* Worrell, Appellant.

*Statute—Construction—Doubtful language—Surrounding circumstances —Constitutional law—School law—Annexation of territory to school district—Act of April 22, 1858.*

The meaning of doubtful language in a statute may be sought for in every legitimate way by the court where the words used may have different meanings in different connections or under different circumstances and by extrinsic evidence, casting light on the condition and position of those in whose behalf a special statute is enacted and of applying it in a sensible manner to the subject to which it relates.

The Act of April 22, 1858, P. L. 472, entitled, "An Act to annex subdistrict No. 1, of Donegal township, in the county of Washington, to the borough of Claysville for school purposes," is not unconstitutional, as taxing electors in the territory annexed, without representation; nor construed in the light of the circumstances under which it was passed, is it "so vague, indefinite and uncertain in its terms and descriptions, that it cannot be understood, applied or enforced."

*School law—Taxation—Tax lien—Personal property on premises.*

The fact that there is personal property on the premises assessed for school taxes, is not a defense to a scire facias on a tax lien filed under the Act of June 4, 1901, P. L. 364.

Argued April 20, 1908. Appeal, No. 6, April T., 1908, by defendant, from judgment of C. P. Washington Co., Aug. T., 1906, No. 130, for plaintiff on case tried by the court without

a jury in suit of Claysville Borough School District v. John
E. Worrell. Before RICE, P. J., PORTER, HENDERSON, MORRI-
SON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Scire facias sur tax lien. Before McILVAINE, P. J.
The facts are stated in the opinion of the Superior Court. .

*Error assigned* was in entering judgment for plaintiff.

*R. W. Knox*, for appellant.

*Albert S. Sprowls*, with him *B. B. Barr*, for appellee.

OPINION BY HENDERSON, J., July 15, 1908:

The borough of Claysville was incorporated by a special act
of the legislature in 1832. Prior to that time the territory em-
braced within the borough lines had formed a part of school
district No. 1, in the southeast corner of Donegal township,
and so continued until the enactment of the general school law
of May 8, 1854, which act provided that every township,
borough and city in the commonwealth should constitute a
separate school district, with an exception not material for
our present consideration. The operation of this statute de-
tached the borough of Claysville from the remainder of the
territory composing the school district and, as a result, the
residents of the district not within the borough limits were
subjected to inconvenience in the matter of school privileges;
whereupon a petition was presented to the legislature, signed
by a majority of the resident voters of the isolated territory, of
whom the ancestor and predecessor in title of the defendant
was one, setting forth the hardships of their situation in the
respect referred to and asking for the enactment of a law in-
corporating the remaining portion of district No. 1 of Donegal
township into the borough of Claysville. In response to this
petition the legislature passed an act approved April 22, 1858,
entitled "An act to annex sub-district number one, of Donegal
Township in the County of Washington, to the borough of
Claysville, for School Purposes." The act contains a descrip-

tion of the territory supposed to be in district No. 1, and intended to be made a part of the Claysville district, and provides that it "shall be attached to and form part of the borough of Claysville, in the County of Washington, for school purposes, and shall be for said purposes under the jurisdiction and control of the board of directors of said borough; and all school taxes within said territory shall be levied, collected and disbursed and the schools administered in like manner, and by the same authority, as in said Claysville · school district." Since the passage of this act the territory described therein, including the farm of the defendant, has been attached to, and been a part of, the Claysville school district. School tax has been regularly assessed and paid by the owners of land in the territory annexed; the children residing in that territory have attended the schools in the Claysville school district as pupils of that district; such qualified electors of the annexed territory as chose so to do, have voted for school directors of the district and some of them have been elected and have acted as school directors. The increase of population in the district rendered necessary the erection of a new and adequate school building a few years ago, and to accomplish that end bonds of the district were issued, $8,700 of which are still unpaid. The plaintiff's claim is for tax regularly assessed, a part of which was necessary to meet the obligation for these bonds. It is now contended by the defendant, that the act of 1858 is unconstitutional; that the territory described in the statute did not become a part of the Claysville borough school district, and that there is no authority to charge the defendant's land by lien or otherwise for the payment of school tax in said district. The specific objections made to the act are that the electors in the territory annexed are taxed without representation, inasmuch as they are not allowed a vote in the government of the school district which has the taxing power, and that the act is "so vague, indefinite and uncertain in its terms and descriptions that it cannot be understood, applied or enforced." We are not left in doubt in regard to the meaning of the language employed in the statute, nor the intention of the legislature in its enactment. The import of any sentence

is found, not only in the words used, but by comparison with other portions of the enactment. When we consider the circumstances calling forth the phrases employed and what the object was which was to be accomplished, the interpretation is not difficult. In the light of the circumstances, the occasion for the passage of the act is apparent and aids us in determining its sufficiency: Tonnele v. Hall, 4 N. Y. 140; Big Black Creek, etc., Co. v. Commonwealth, 94 Pa. 450. The meaning of doubtful language in a statute may be sought for in every legitimate way by the court where the words used may have different meanings in different connections or under different circumstances and by extrinsic evidence, casting light on the condition and position of those in whose behalf a special statute is enacted and of applying it in a sensible manner to the subject to which it relates. The purpose of the act under consideration was to improve the school privileges of the residents of district No. 1. To accomplish this object, the legislature deemed it advisable to combine that district with Claysville borough and thereby to constitute the consolidated territory a school district. It was declared that the land within the limits fixed should form a part of the borough of Claysville for school purposes, and be under the jurisdiction and control of the board of directors of that district. The result was to establish a district not in conformity with the general school law of the state under which each borough and each township constituted a separate school district, but to form out of the territory of contiguous municipal districts a school district of a class called independent districts, many of which had theretofore been created by special acts of the legislature and provision for the creation of which was made in the act of May 8, 1855, which is a supplement to the act of May 8, 1854. The words of the statute are "under the jurisdiction and control of the board of directors of said borough," but it is obvious that the word "borough" is used in the sense of "district." There was not and never has been a board of directors of the borough, as a borough. The directors referred to were the officers of the school district. The citizens of the annexed territory are put, by the statute, on an equality with the

citizens of the borough in the matter of the administration of the schools: Colwin v. Beaver, 94 Pa. 388. It is fairly implied in the act, if not expressly declared, that the schools are to be conducted and governed in the same way as if the attached territory was a part of the borough for all purposes. We held in Nelson's Contested Election, 34 Pa. Superior Ct. 591, that a statute somewhat similar in that portion of it creating the Mercer school district, formed an independent district subject to the laws regulating such an organization, and a portion of the discussion by Judge BEAVER in that case is pertinent in this. The qualified electors of the annexed territory were, therefore, on an equality with the electors of the borough in the choice of directors and the administration of the schools and had the same status under the constitution with reference thereto. Elections of directors were presumably held at the spring elections as implied in the fourth section of the act of May 8, 1855, and provision was made in the ninth section of the Act of April 11, 1862, P. L. 471, for elections in independent districts then established or thereafter to be established by the legislature without specifying the mode, time or place of electing directors.

We are not impressed by the argument that the act is so uncertain in its description that it cannot be applied to the subject. There is nothing on its face indicating such vagueness or indefiniteness as to render it void, nor is this criticism sustained by the evidence. Whatever uncertainty there may be as to the inclusion of the Dennison farm and the McConahey farm in the school district as enlarged by the act, it is reasonably clear that all the territory between those farms comprised within sub-district No. 1, is included in the description of the territory annexed and became part of the enlarged district. The parties interested at the time had no difficulty in understanding it and acting under it for nearly half a century, and it would require a very clear case to move a court to disturb that which had been acquiesced in by all concerned for so long a time, on this ground. We need not go into a consideration of the question of estoppel which the learned court below considered a sufficient answer to the appellant's objec-

tion. Nor is it necessary to discuss the validity of the act of March 1, 1895, by which it was attempted to amend the act of 1858. We base our judgment on the efficiency of the latter act to accomplish the legislative purpose.

The appellant contends further, that as there was personal property on the assessed premises at all times out of which the tax could have been made it was the duty of the collector to exhaust the personal property as required by the act of 1834, and that a lien for taxes cannot be sustained. This is not a defense to a scire facias on a tax lien filed under the act of June 4, 1901. That act gives a lien in favor of school districts, and prescribes the time when and the manner in which the claim may be filed and the procedure under which it may be enforced, and furnishes a complete system for the collection of taxes through a recorded lien. The claimant is entitled to its lien and judgment thereon, under the express words of the statute. Whether the land could be sold until the personal property on the premises liable to seizure for the tax is first sold we need not consider, for the case has not reached that stage.

The assignments of error are overruled and the judgment affirmed.