New Britain Borough School District.

Argued January 14, 1929. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*S. M. R. O'Hara,* Deputy Attorney General, with him *William H. Satterthwaite, Jr.* and *Thomas J. Baldrige,* Attorney General, for appellant.—The power of the court under section 210 of the School Code is merely a ministerial one to enter a decree to determine the proper classification and to appoint school directors until the next municipal election.

Before the amendment, the mere question of population decided whether or not a new district was of one class or another and the court entered its decree accordingly. Now another element has been inserted by the legislature. The State Council of Education must investigate and approve before the court has power to erect a separate district. The school district is but an agency of the Commonwealth, and there is no inherent right in the electors of any particular locality to vote for directors; subject to constitutional restrictions, the State may provide any method for the selection of its agents it may see fit, and the methods employed need not be alike in all instances: Minsinger v. Rau, 236 Pa. 327, 331; Com. v. Moir, 199 Pa. 534, 544-7.

*Calvin S. Boyer,* with him *Isaac J. Vanartsdalen,* for appellee.—The acts violate the constitutional right

of free and equal franchises: Nelson's Election, 34 Pa. Superior Ct. 591; Claysville Boro. School Dist. v. Worrell, 37 Pa. Superior Ct. 10.

It would be impossible for borough voters to participate in the election of township school directors.

To bar borough voters from participating with other voters of the school district in the election of school directors is unconstitutional: Page v. Allen, 58 Pa. 338; McCafferty v. Gyer, 59 Pa. 109; Independence Party Nomination, 208 Pa. 108; Cusick's Election, 136 Pa. 459; DeWalt v. Bartley, 146 Pa. 525.

The titles of the acts are insufficient: Com. v. Boro., 272 Pa. 189.

OPINION BY MR. JUSTICE SADLER, February 4, 1929:

The Borough of New Britain was created on May 21, 1928, by the Court of Quarter Sessions of Bucks County, from parts of the townships of Doylestown and New Britain, and at the same time was formed an election district coextensive therewith. The School Code of 1911 (May 18, P. L. 309, section 101) provided that "each city, incorporated town, borough, or township in this Commonwealth, now existing or hereafter created, shall constitute a separate school district, to be designated and known as the school district of....." Article 2, section 210, of the same act, directs that "when a new school district is hereafter formed by the creation of a new city, borough, or township, the court of common pleas having jurisdiction shall determine and enter in its decree the class of school districts to which such new district shall belong, and shall appoint a board of school directors." Upon petition of resident taxpayers and electors of the newly created borough, this legislative direction was complied with notwithstanding the opposition of the two townships from which it was formed, and a new school district of the fourth class was declared and directors named on June 27, 1928.

Were it not for legislation amending section 101, above referred to, the power here exercised by the court could not be questioned. It was altered, however, by the Act of May 20, 1921, P. L. 1023, and, subsequently, by the Act of March 23, 1923, P. L. 31, though the latter change does not affect the present situation, and need not now be considered. The first cited amendment adds to the original provision these words: "Except that where such city, incorporated town, borough, or township, or a part of the school district remaining after its separation, would constitute a fourth class school district, in which case it shall remain a part of the school district to which it formerly belonged, unless the change to a new school district is approved by the State Board of Education. In determining whether or not such approval shall be given, the State Board of Education shall investigate the necessity therefor, and take into consideration the welfare of the pupils and taxpayers of such proposed new school district, as well as the effect upon the existing school districts."

An application was made, to the commission designated, for recognition of the newly created district of the Borough of New Britain, but action has to this time been withheld, awaiting a determination of the validity of the amending act. On September 4, 1928, the Commonwealth asked leave to intervene in the proceeding to create a new district. This request was allowed, and thereupon a petition was presented asking that the order previously entered be vacated as improvident because the State Board of Education had not assented to its formation. It was urged that, before such a decree could be made by the court, the project must meet the approval of the Commonwealth's officers, after a finding by them that the interests of all concerned would be advanced. Though a school building was already erected within the lines of the new borough, yet the entire assessed valuation of the property was only $145,-000, and it was contended that the revenue available

would be insufficient to care for the 43 pupils of school age residing therein, and who had theretofore made use of schools in the two townships from which the borough was formed. As a result, it was insisted that the erection of a new district would not be of benefit, and should not meet the approval of the state authorities, who as yet had failed to pass upon the question because of doubts as to the legality of the legislation, which attempted to confer upon them this power of deciding the question.

The court of common pleas held its duty to be to create the new district, embracing the territorial limits of the new borough and election district. The retention of the land within the borough as part of the two adjoining school districts was held to be impossible, without infringing on the rights of the taxpayers residing in the newly formed municipal division, and the power to so direct, attempted to be conferred on the state board by the amendment of 1921, was held unconstitutional; otherwise a portion of the electors would be deprived of a voice in the selection of directors, who would collect the necessary funds and expend the same in management of the schools conducted beyond the borough lines.

There can be no doubt of the right of the legislature, in regulating the common schools, to make classifications as deemed necessary to furnish the best service, and it may even provide that in certain districts the taxpayer may not exercise his franchise, but the directors may be selected in another manner than by election, as by appointment by some designated body, such as a board of judges: Minsinger v. Rau, 236 Pa. 327; Com. v. Moir, 199 Pa. 334. Where such classifications are provided for, however, there must be uniformity, and like rules applied to all in the same group. In the present case we are dealing with those of the fourth, where taxpayers generally are given the right to choose their managers by popular vote. If this privilege be granted,

as it is, in other municipal divisions of the same character, then all within like territory must be permitted to exercise it.

By our fundamental law it is provided that "elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage": Constitution, art. 1, section 5. "A right conferred by the constitution is beyond the reach of legislative interference. If it were not so, there would be nothing stable; there would be no security for any right. It is in the nature of a constitutional grant of power or of privileges that it cannot be taken away by any authority known to the government. It involves a prohibition of interference with it": McCafferty v. Guyer, 59 Pa. 109, 111. See also Page v. Allen, 58 Pa. 338. As was said in Independence Party Nomination, 208 Pa. 108, 112: "The constitution confers the right of suffrage on every citizen possessing the qualifications named in that instrument......His right cannot be denied, qualified or restricted, and is only subject to such regulation as to the manner of exercise, as is necessary for the peaceable and orderly exercise of the same right in other electors......Every doubt, therefore, in the construction of the statute must be resolved in favor of the elector."

The legislature may pass statutes fixing the manner in which elections shall be conducted (Patterson v. Barlow, 60 Pa. 54), and provide safeguards against attempts to unlawfully exercise the right to vote: Cusick's Election, 136 Pa. 459; DeWalt v. Bartley, 146 Pa. 529. It may direct, as it has done, that all ballots used at the same voting place shall be alike: Act June 10, 1893, P. L. 419, section 15. Various other provisions might be referred to, which show the impossibility of those residing in the new borough taking part in the election of school directors in the adjoining township as the law now stands.

484

If the new school district be not established, but the property within it be continued as parts of the two adjoining township divisions, as permitted at the option of the State Board of Education by the amending Act of 1921, already referred to, then the residents in the new borough will be deprived of the right to vote in so far as the election of school directors is concerned, though such privilege exists in the case of all qualified taxpayers in other fourth-class districts. It is evident the elector in the borough, whose property formerly lay within one of the old municipal divisions from which it was taken, could not vote in his old election district, for he is no longer a resident therein. The constitution itself (article 8, section 1, par. 3) directs that he "shall have resided in the election district where he shall offer to vote at least two months immediately preceding the election." Nor could he vote in the newly created election district for directors to manage the old school district, of which it is proposed he shall remain a part. The ballots in the new district must be the same, and could not have printed thereon the names of candidates for the office of school director in both Doylestown and New Britain Townships, for one part of those in the borough could only vote for those nominated for the former, while others would have the right to vote only for the candidates in the latter.

It is suggested by the Commonwealth that this apparently insuperable objection can be overcome if the court of quarter sessions would divide the borough election district into two parts, including in one the territory taken from the one township, and in the second that from the other. Then it is said the names of the school directors for the appropriate division could alone be printed on the ballot, and the taxpayer thus given the opportunity to voice his preference for those who are legally authorized to levy taxes and expend the same. A sufficient answer to this proposition is that the court of quarter session, in whom discretion

is lodged (Constitution, article 8, section 11; Fell Township Polling Place, 39 Pa. Superior Ct. 319), and which cannot be taken away by legislative enactment (Township of Bern, 115 Pa. 615), has not seen fit to make such division. If the amending act is sustained, and the lines of the township school districts remain as theretofore existing, there will be included land within the borough and new election district. As a result, the taxpayers in New Britain Borough will be deprived of their right to vote for school directors as allowed to all in other fourth-class districts. The amending act in question cannot therefore be upheld, as properly decided by the court below. As a whole, the code is valid legislation, as held in Minsinger v. Rau, supra, but, as there pointed out, that decision did not purport to pass upon the validity of sections not then the subject of attack, or amendments thereto, such as are now before us.

Undoubtedly the purpose of the Act of 1921 was meritorious in attempting to prevent the creation of small school units which could not be managed with advantage to taxpayers therein, but, in attempting to secure a laudable result, legislation cannot be enforced which violates fundamental rights secured by the constitution. It would have been possible to reach the end desired by providing for special elections by all those within the territory affected, so that all taxpayers would possess an equal right of suffrage, and this was the course followed formerly when independent school districts were established, special elections being expressly provided for by the Act of April 11, 1862 (P. L. 471, section 9), a statute repealed by the School Code of 1911 (P. L. 440, par. 11). The effect of such legislation in removing the objections made evident in the case at bar, and the failure to hold an election in such a new district made up of parts of separate municipal divisions, as had been provided in the act referred to, with the result that certain electors were to a limited

486

extent disfranchised, rendering the election void, was the subject of discussion in Nelson's Contested Election, 34 Pa. Superior Ct. 591. See also Claysville Borough School Dist. v. Worrell, 37 Pa. Superior Ct. 10.

The amendment passed in 1921, authorizing the State Board of Education to direct that portions of the new borough remain for all purposes parts of the two township school districts from which they were severed, cannot be upheld, since the effect is to bar the voters therein from participation in the election of school directors, as permitted to all other taxpayers of fourth class school districts. The attempt to give the veto power to the State board, with the resulting consequences, is void, and the action of the court below, in creating the new district, as directed by article 2, section 210, of the code, must be approved. What has been said makes unnecessary a discussion of other constitutional objections to the amendment, raised below, and referred to on argument before us.

The order and decree is affirmed at the cost of appellant.